Wri&ht, J.
No statement of the case can be made, or opinion given, which will convey to a mere listener a dear-idea of the matters in dispute. They involve courses and distances, monuments, maps, and deeds; a' careful, patient-examination of which is indispensable to a correct understanding of the controversy. But when such examination is made, confusion is dispelled and the point in doubt be--comes clear. The mistake, already spoken of, is as stated in defendant’s brief, in the beginning corner. Jacob Broad-Well intended to convey to John Bay one hundred acres,, in a tract the opposite sides of which were parallel. The-two short sides, eighty poles, ran S. 65° E. and N. 65° W. The two long sides, three hundred poles, ran N. 49° E. and S. 49° W. On the map, which is from a survey of modern date, the courses and distances vary a little from the Bay deed. The courses are 64° instead of 65°, in the one case, and 49° 08' and 50-|° instead of 49°. The distances of the short sides are the same in map and deed, eighty poles. The-distances of the long sides are two hundred poles in the-deed and a few more poles in the map. These discrepancies,. *261 however, are not unusual and are immaterial. In the Day ■deed, however, Jacob Broadwell made the mistake of beginning at the southeast corner, instead of the northwest corner of the land he intended to sell. He began at A, •on the map, when he should have begun at B.
The mistake is shown by this fact: if we begin at A, the southeast corner of the land conveyed, as Broadwell •did in the Day deed, and run the courses and distances of' that deed, we get a tract of land, just about one-half of which Jacob Broadwell never owned. Whereas, by beginning at B, the southeast corner of the lanci conveyed, and running the courses and distances of the Day deed, we get a tract of land, all of which Jacob Broadwell did own, being made up of the parts, one from the Jacob Fear tract, the other from the Robert Brown tract, both of which belonged to Broadwell. The true description is verified by .another fact. In the deed from Jacob Broadwell to Day, •the second course and distance calls for “three sugar.trees 'in a small run,” thus : “thence north forty-nine degrees east two hundred poles to three sugar trees in a small run.” Now this call for these same trees as a monument, is found in the •first course and distance of the Robert Brown patent of 1804, thus: “thence north twenty-five degrees east two hundred poles, crossing a branch at six poles to three sugar trees near a branch.” These “ three sugar trees near a branch,” •or “in a small run,” mark the northeast corner of the .Robert Brown patent and also the northeast corner of the Day tract. The Robert Brown patent and the Day deed were made in the same year, 1804. At that time, therefore, the three sugar trees stood there to fix the cornel’s of the Brown patent and the Day deed. This point, therefore, is fixed beyond dispute, and is the point E on the map.
Again, in the Day deed the third course and distance is "thus : “ thence north sixty-five-west eighty poles to ash, elm, and beech trees.” In the Brown patent of the same year, the second course and distance is thus: “ thence north sixty-five degrees west eighty poles to an ash, dm, and beech corner to Jacob Fear’s survey.” Here we have this monument, *262 “ ash, elm, and beech,” in both documents. They fix the-northwest corner of the Robert Brown patent and the northwest corner of the Bay deed, at one and the same-point, marked by the same trees. This point is marked in the same way as the corner of Brown and Fear, in plaintiff’s petition and also in the bill filed by them to secure the Fear title. There is no dispute as to what the Robert Brown patent is, or what it covers, and when we get the-corners of that patent and find the corners of the Day tract to be identical with them, we know where Day’s corners are. We therefore have two corners of Brown and Day fixed as identical. We know Brown’s north line, for there-Is no dispute about it, and the north line of Day we find to be identical with it. Again, the monument of “ ash, elm, and beech,” called for in the Brown patent and the Day deed, which fixes the northwest corner of both Brown and Day, also fixes a corner of the Fear tract. In the Fear patent to Broadwell, the beginning point is thus : “ Beginning at an ash, elm, and beech, north corner to Robert Brown’s survey.” The “ ash, elm, and beech,” therefore, fix a corner of Fear and a corner of Brown. The suveyor says this “ ash, elm, and beech ” has always been the established, undisputed; recognized corner of Fear and Brown. There is no dispute about these surveys or these corners.. The monument which fixes them, namely, “ ash, elm, and beech,” is the same monument which fixes a corner for Day. We have, therefore, a second corner of Day fixed by a monument. That identical monument fixes for Fear and Brown a corner which is known. Day’s corner therefore becomes known. This joint corner to Fear, Brown, and-Day is C in the map. We have now fixed beyond dispute the points E and C of the Day deed. E is the northeast corner of the Brown patent and Day tract. C is the northwest corner of the Brown patent and Day tract, also corner to Fear. We have the line between E and C identical. in the Brown patent and Day deed. It is eighty poles in length and runs north sixty-five west. Take this line as a base. We know from Day’s deed that his is a tract with *263 parallel sides, eighty rods one way and two hundred the other, the long sides being both S. 49° ~W. Now if from the base line assumed, we run two sides, S. 49 W. we have the proper Day tract.
If this statement is examined, in connection with the map and deed and patents it will be found to solve the difficulty. "We would not have gone into the matter with such tedious minuteness, but that counsel argue with such earnestness to a different result.
This conclusion, thus reached upon the documents themselves, is fortified by all the other evidence in the case.
Eor instance, in 1832, Jacob Broadwell conveyed a tract of land to Cross. If we follow the description plaintiff attempts to give the Day deed, it would cover the very land conveyed to Cross, thus making Broadwell convey to Cross in 1832, what he had already conveyed to Day in 1804; furthermore Cross’ deed calls for John Day’s line and runs with it S. 49|° W. ninety-eight poles, to a large ash and stone corner, to John Day. This fixes John Day’s last line in 1832, and if therewere nothing else in the case, Upon this line we could construct the Day tract from his deed.
Again, this very important testimony is found in the record. Elijah Day testifies that at one time, he, with Jacob Broadwell and Lewis Broadwell, his son, who was a surveyor, went around the Day tract to fix its boundaries. He says that several others were -present. He was requested by Jacob Broadwell to be present, as he, Elijah, was owner of an undivided third of the John Day tract. Hpon this occasion Jacob Broadwell planted a stone at B, the southwest corner of the tract. This stone appears to have been moved, and is found how 3.76 rods from B. He also says they planted a stone at the southeast corner, A on the map, near a large ash.
This transaction was between 1830 and 1834. It is impossible that the Broadwells and Days should have gone over the tract, run its boundaries, and not known where they were, especially when the Day family were living upon it. At least, if they did not know before, they fixed *264 tbe lines then, and fixed tbem according to tbe description we bave already given.
Elijah is corroborated by others wbo were present at this survey — Artemus Hay and Timothy Hay. There is nothing to contradict this evidence. It is clear, therefore, that a mistake was made in the beginning corner, and that the Hays are entitled to hold what the evidence shows they have always had in possession since their deed was made.
There is nothing in the objection, that because Jacob Broadwell did not have the legal title in 1804, that therefore the Day deed conveyed nothing. Broadwell was in possession; he made a deed with covenants of warranty, and subsequently acquired the legal title. That title therefore passed to Hay. The principle is well settled by the .authorities quoted by defendant, that where one has sold with warranty what he does not own but subsequently acquires, the grantee takes the title by estoppel.

Judgment of, the common pleas affirmed.